**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **HEATHER CLARK, et al.** | § | |
| | § | |
| **V.** | § | **A-10-CA-869 LY** |
| | § | |
| **WILLIAMSON COUNTY** | § | |

<u>**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**</u>

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are the Defendant's Motion for Summary Judgment (Clerk's Doc. No. 26);

Plaintiffs' Cross-Motion for Partial Summary Judgment (Clerk's Doc. No. 36); and Defendant's

Response in Opposition to the Plaintiffs' Motion (Clerk's Doc. No. 40). The District Court referred

these motions to the undersigned Magistrate Judge for report and recommendation pursuant to 28

U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the

Local Rules of the United States District Court for the Western District of Texas, Local Rules for

the Assignment of Duties to United States Magistrate Judges (Clerk's Doc. No. 41).  On February

24, 2012, the undersigned conducted a hearing on the motions.  After reviewing the parties'

pleadings, relevant case law and the entire case file, the Magistrate Court now issues the following

Report and Recommendation to the District Court.

**I.     General Background**

The Plaintiffs, 115 EMS workers employed by the Defendant, Williamson County, filed a

collective action for unpaid overtime.  The District Court conditionally certified the class, Clerk's

Doc. No. 10, and allowed the parties to bifurcate the case into two stages: liability and damages.  The

County filed its motion for summary judgment, asserting that its method of paying overtime

complied with the Fair Labor Standards Act (FLSA).  The Plaintiffs filed a cross-motion for summary judgment, claiming that the payment scheme violated the FLSA.  How Williamson County paid the EMS workers is not factually disputed.  But the parties disagree on whether that payment scheme conformed with the FLSA.  The County argues that its compensation plan for EMS workers complied with the Fluctuating Workweek (FWW) method of compensation permitted by the FLSA, *see* 29 C.F.R. § 778.114, and in fact, was more generous than what the FWW requires.

The Plaintiffs disagree, and contend that the County was in effect paying them the same hourly rate for every hour worked, but disguised the scheme as a weekly salary plus an overtime premium to avoid paying the time-and-a-half required by the FLSA.  They also contend that they never agreed to be paid under the FWW, and that there was confusion regarding precisely how they were paid.  They further point out that they were always scheduled to work more than 40 hours a week—and if they did not work 40 hours for some reason, *e.g.*, they were sick or on vacation, the County required them to use leave time to avoid having their pay docked, which they contend is inconsistent with the guaranteed minimum salary component of the FWW.

While there has been a plethora of briefing and hundreds of pages of documents submitted on the cross motions, the points in dispute in this case can be distilled down to two questions:

(1)     Did the Plaintiffs know they were paid under the FWW, and did they agree to this?

(2)     Were the Plaintiffs in fact paid in a manner consistent with the FWW, or was the County instead disguising paying the Plaintiffs a flat hourly rate for all hours worked as a FWW scheme?

Thankfully, this is not a misclassification case in which the defendant employer is contending that the proper damage methodology is set forth by the FWW.  Here, there is no question that the EMS workers were non-exempt employees entitled to be paid overtime when they worked more than 40

hours in a week.[1]  Thus, when all is said and done, this Court need only resolve the two questions set out above to resolve this case.

## II.    Legal Standard

Summary judgment may be granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence demonstrating a genuine fact issue.  *Matsushita*, 475 U.S. at 586.  Mere conclusory allegations are not competent summary judgment evidence and thus are insufficient to

---

[1]In the past few years, the undersigned has presided over several misclassification cases seeking FWW-type damages, and those cases presents more complicated issues than a "standard" FWW case like this one.  *See, e.g., In re Texas EZPawn Fair Labor Standards Act Litig.*, 633 F. Supp. 2d 395 (W.D. Tex. 2008); *Ransom v. M. Patel Enters., Inc.*, No. A-10-CA-857-AWA, 2011 WL 5239229 (W.D. Tex. Nov. 1, 2011) and 2012 WL 242788 (W.D. Tex. Jan. 25, 2012).

defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, then summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## III.   FLSA Law

Congress codified its findings and policy for the Fair Labor Standards Act in 29 U.S.C. § 202. As stated in that section, Congress intended the Act to alleviate two problems: (1) overworked and underpaid employees, and (2) high unemployment rates stemming from employers hiring fewer workers and mandating that they work longer hours. To further Congress's goals, for all hours over 40 in a week, the FLSA requires employers to pay employees an overtime premium of "not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The "regular rate" is the employee's compensation stated on an hourly basis. 29 C.F.R. § 778.109; *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 579–80 (1942). This provides an incentive

to employers to hire more employees and reduce individual employees' workloads.  *Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419, 423–24 (1945).  Along with minimum wage, it keeps employers from overworking and underpaying employees.[2]

"[T]he FWW method is one method of complying with the overtime payment requirements of 29 U.S.C. § 207(a)(1).  It is not an exemption to it."  *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir. 2001); *see* 29 C.F.R. § 778.2 (noting that the subpart of 778, which includes the FWW method, does not discuss any specific exemptions to the overtime or minimum wage payment requirements of the FLSA); *Griffin v. Wake County*, 142 F.3d 712, 715 (4th Cir. 1998); *but see Dingwall v. Friedman Fisher Assocs.*, 3 F. Supp. 2d 215, 221 (N.D.N.Y. 1998) (determining that the FWW is "an exception to the normal rights of the employee and thus the employer bears the burden of proving that all the requirements for applying the method are present").  Therefore, the employee bears the burden of proving that the employer failed to properly administer the FWW method.  *See Cash v. Conn Appliances, Inc.*, 2 F. Supp. 2d 884, 896 (E.D. Tex. 1997) ("The employee alleging an improper application of the fluctuating workweek method bears the burden of proof.").

In *Samson v. Apollo Resources, Inc.*, the Fifth Circuit explained in very plain terms the rationale of the FWW, and the rules regarding implementing it, and that discussion is worth a lengthy quotation here:

> The Fair Labor Standards Act generally requires that employees be paid an overtime premium of "time-and-one-half" for all hours worked in excess of forty hours in a week.  29 U.S.C. § 207(a).  The Department of Labor provides to employers various methods for calculating overtime compensation to suit different employment needs

---

[2]The specifically declared policy of the FLSA is "to correct and as rapidly as practicable to eliminate [labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers] without substantially curtailing employment or earning power."  29 U.S.C. § 202(a), (b).

5

while still complying with § 207(a).  One such method is the Fluctuating Workweek method.  29 C.F.R. § 778.114 (stating the guidelines governing the use of the FWW method).   Under the FWW method, the employee receives a fixed salary as compensation for all hours worked by the employee, whether above or below forty hours, as well as an additional overtime premium for each overtime hour.  *Id.* § 778.114(a).  The overtime premium is calculated by dividing the fixed weekly salary by the number of hours that the employee actually works in a particular week to yield the employee's "regular rate of pay." *Id.*  The employee is paid an overtime premium of one-half his regular rate of pay for each overtime hour.  This premium is in addition to his fixed weekly salary.  Under the FWW method, the employee is effectively earning time-and-a half as overtime pay.  However, his hourly wage and the actual amount of overtime pay he earns decreases the more hours that he works.  The fixed salary must be sufficient to provide compensation at regular rate meeting the minimum wage requirement of 29 U.S.C. § 206(a)(1), and the overtime premium cannot be less than one-half the regular rate of pay.  29 C.F.R. § 778.114(c). *Condo v. Sysco Corp.*, 1 F.3d 599, 601 (7th Cir.1993), *cert. denied*, 510 U.S. 1110 (1994); *Cash v. Conn Appliances, Inc.*, 2 F.Supp.2d 884, 893 (E.D.Tex. 1997).

*Samson*, 242 F.3d at 633.  As noted in *Samson*, the Department of Labor has issued bulletins regarding the FWW, and explained in detail when an employer wishing to pay employees pursuant to the FWW may do so.  The most basic of these rules provides that:

> Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act.

29 C.F.R. § 778.114.

## IV.    Analysis

### A.    Williamson County's Payment Method

The history of the payment scheme at issue is important.  During the 1990s, the County paid its EMS workers under a traditional FWW method.  It paid the workers a weekly salary, and to calculate the overtime premiums, it divided the weekly salary by the number of hours actually worked and paid them 50% of that rate for every hour over 40.  In 1998 (effective in 1999), the

County changed the payment scheme, allegedly because EMS workers complained that their hourly rate diminished with each additional overtime hour worked—one of the notable features of the FWW—and the County did not want to lose EMS workers to other employers. *See* Plaintiff's Statement of Undisputed Facts (Clerk's Doc. No. 36-1) ¶ 28.[3]

The new payment plan had several key features. First, EMS workers received a salary that would not be reduced if they did not work 40 hours in a week, or increased if they worked more than 40 hours. If the employee worked less than 40 hours and had leave time, the County would use leave time to make up the difference between the hours worked and 40. Finally, if an employee worked more than 40 hours, they received an overtime premium calculated by multiplying the number of overtime hours worked by the quotient of the weekly salary divided by 40, as opposed to the hours actually worked. The Plaintiffs do not deny that they were aware of the scheme during their employment. Rather, they dispute how well they understood the documents explaining the method. *E.g.*, Deposition of David Claxton 139:2–15, Deposition of Heather Clark 25:5–14. They allege that the confusion stemmed from receiving conflicting information from the County. Deposition of Claxton 70:17–25, Deposition of Clark 82:1–15.

## B.    Mutual Understanding

The Plaintiffs contend that they never had a clear mutual understanding with the County regarding how they would be paid. The Plaintiffs point to several pieces of evidence in support of this claim. David Claxton testified in his deposition that the trainer told him that they could ignore

---

[3]In October 2011—reportedly because of this lawsuit—the County returned to a traditional time-and-a-half compensation method. That is, each employee is paid an hourly rate for the first 40 hours worked, and one-and-a-half times that rate for hours over 40. Thus, considering the statute of limitations, the relevant period in this case spans from November 15, 2007 to October 2011.

the legalese (of the FWW) and just understand that they were paid a straight rate, hour for hour. *See* Deposition of David Claxton, 70:17–25. The Explanation of Overtime memo also tells Plaintiffs that their regular rate is determined by dividing their guaranteed salary by 40. Compton Dep. Ex. 12. The employee handbook stated that employees who work any hours in a pay period must be paid their guaranteed salary for that pay period, and the policy explained that the overtime premium paid would be equal to the EMS employees' straight rate. Claxton Dep. Ex. 32. And this handbook also stated that overtime was calculated at the same hourly rate as for the first 40 hours per week. *Id.*

The summary judgment record also contains evidence that during the EMS workers' employment, they regularly received a packet of information that included several documents discussing their compensation method. By 2005, all of the Plaintiffs working for the County had received the Special Leave and Payroll Information Memorandum (Compton Dep. Ex. 11), and the employee handbook also contains information on the payment method (Claxton Dep. Ex. 32 WILCO 01830). The County also gave a PowerPoint presentation during orientation that contained information on how it paid the Plaintiffs (Compton Dep. Ex. 9). And in 2006, Kevin Castello, an EMS employee, circulated a memorandum among all EMS employees describing the results of his investigation, on behalf of the EMS workers, into the payment method, where he states that his lay conclusion was that the payment scheme complied with the FLSA. Castello Memo, Ex. 4 to County's Motion for Summary Judgment (Clerk's Doc. No. 27). All of these documents set out the details of the payment method, and the parties do not dispute the mechanics of the method.

While the Plaintiffs contend that they were confused as to how they were paid, they admit that they received a salary, and they received the salary even if they worked less than 40 hours (though they had to use leave time to make up the difference). The Plaintiffs attempt to discount this

8

fact by stating that they were never scheduled to work less than 40 hours and never in fact worked less than 40 hours.  They further contend that they believed they would be fired if they worked less than 40 hours and did not have sufficient leave time to cover it.  While they make these claims, the undisputed evidence demonstrates that when an EMS employee actually ran out of leave time and still failed to work 40 hours in a week, they continued to be paid their weekly salary.  The Plaintiffs also concede that they received training about their compensation method, though they claim the training was confusing, as noted above.

In *Samson*, the Fifth Circuit cited approvingly the Fourth Circuit's holding that the FLSA does not require that the "employer hold an employee's hand and specifically tell him or her precisely how the payroll system works"—the employer needs only to communicate that the salary covers all hours worked and that the employee receives the salary even if the employee does not work 40 hours.  *See Samson* 242 F.3d at 637 (citing *Griffin v. Wake Cnty.*, 142 F.3d 712, 717 (4th Cir. 1998)).  When training was provided, and written explanations distributed—as it was here—an employee cannot simply claim after the fact that they did not understand their payment scheme.  In this case, at the outset of their employment the EMS employees received a written explanation of the payment scheme, and signed a document acknowledging that they had received and understood the explanation.  They continued to receive information about the plan from numerous sources throughout their employment.  And they received concurrent overtime payments.  All of this took place without objection or complaint from any of the employees.

The parties' course of conduct is important on this issue as well.  The evidence on this point favors the County.  First, as has been noted, the County educated EMS employees on the FWW method at the beginning of their employment, and also circulated documents annually explaining the

9

payment method.  There is no evidence that any employees raised any questions or complaints about their compensation thereafter.  Indeed, the evidence is that the employees, having received this information, routinely accepted their salary and overtime premiums without complaint.[4]  In fact, as has been noted, one EMS employee decided to investigate the payment scheme on his own, and wrote a memo to his EMS colleagues detailing the results of his investigation.[5]  He notes that he "chose to do this," he was not tasked with the job by the County, and that he had met with the County "several times and [it] has been totally open to accurate information and . . . has [not at] any time or in any way tried to influence th[e] outcome" of his investigation.  Castello Memo, Ex. 4 to County's Motion for Summary Judgment, at WILCO 01136 (Clerk's Doc. No. 27).  He accurately explains the scheme, and states that:

> We are paid under 29 CFR 778.114 of the Department of Labor code - Fixed salary for fluctuating hours or fluctuating workweeks. A copy is attached on pages 5-6 of this document. It is important to understand that this pay method is NOT an exemption and therefore has nothing to do with the exemption rules above. It is a legal and authorized method of paying overtime instead of the standard time and a half method. This is not my opinion but rather is found in the 5th Circuit Court opinion, Samson v. Apollo Resources Inc.

---

[4]In the misclassification context, many courts have retroactively applied the FWW method to determine damages due to plaintiffs who were not paid overtime because the employer erroneously classified them as exempt.  The undersigned does not believe that "course of conduct" evidence is relevant in a misclassification case because the parties operated under the incorrect assumption that the employee was not entitled to overtime payments.  *See Ransom*, 2011 WL 5239229, at *2–5.  The situation is different in a case such as the instant case, where all parties agree that the employees are non exempt, and the FWW was applied from the start.

[5]The memo explains that it was written to address confusion that arose following the issuance of DOL Fact Sheet #17J, which stated that paramedics were not exempt employees.  This apparently led to a lot of conversation among EMS employees, and a renewed interest in their compensation scheme, and more specifically, in whether they were receiving overtime pay.

*Id.* at WILCO 01135.  His overall conclusion sums it up well: Williamson County "is paying us far above what is required under the fluctuating workweek rule."  *Id.*   Castello circulated his memo explaining his research to the other EMS employees.  Once again, after receiving the memo from a fellow EMS worker, the Plaintiffs failed to object to the scheme.

All of this makes it plain that the County did everything required by the FLSA and the applicable FWW bulletins to reach an understanding with the EMS employees regarding their payment scheme.  None of the evidence is in dispute.  The only evidence suggesting a lack of agreement are the Plaintiffs' after-the-fact claims that they were confused about the scheme.  While the Court is sympathetic with this, such claims of confusion are simply insufficient as a matter of law to raise a fact question regarding whether the FWW has been mutually agreed to by an employer and employee.[6]  The Fourth Circuit put it well: the employer is not required to "hold an employee's hand and specifically tell him or her precisely how the payroll system works."  *Griffin*, 142 F.3d at 717.  The County presented the matters to the EMS employees more than adequately, and the Plaintiffs' arguments that they did not have a clear mutual understanding with the County on their method of compensation fails.

---

[6]If confusion alone were enough to create a fact issue in an FWW case, then all such cases would go to trial.  The undersigned has presided over several cases over the past few years that raise FWW issues, and despite 25 years experience as an attorney, several of them as an employment specialist, the FWW was not intuitive even to me.

C.      Did the County Apply the FWW Properly?[7]

The Plaintiffs state that the "most fundamental" reason the payment scheme does not satisfy § 778.114 is that the County's guaranteed salary was for a fixed minimum number of hours and did not fluctuate. They claim that the guaranteed salary was not a true salary—it was simply their hourly rate multiplied by the first 40 hours they worked, and that the overtime premium was simply that hourly rate as well, instead of one-and-a-half times the hourly rate.

During the February 24th hearing on the motions, the undersigned asked the Plaintiffs' counsel to point to the evidence in the record that best supported their position that the weekly salary was only intended to compensate the Plaintiffs for the first 40 hours they worked. In response, the Plaintiffs' counsel identified three pieces of evidence: (1) the Special Leave and Payroll Information Memo; (2) one of the Plaintiff's pay stubs; and (3) a slide from the orientation PowerPoint labeled "How we get Paid." After the hearing, the Plaintiffs filed an advisory to the court with 13 additional documents in support of this claim:

1.      Payroll Manager Donna Barker's affidavit describing the pay system, stating that the Defendant divided the guaranteed salary and any other wages by 40 hours each week.

2.      Kenny Schnell's deposition, where he agrees that Claxton received the same rate for hours above and below 40.

_____

[7]This analysis may be unnecessary. At the hearing, the Plaintiffs' attorney conceded that if the parties had a clear mutual understanding about this payment scheme, the scheme would not violate the FLSA. Audio recording of the February 24, 2012 at 3:28. The Plaintiffs' briefing, however, seems to contradict this concession. This is largely because the Plaintiffs have throughout the case conflated the question of whether they had a "clear mutual understanding" with the issue of whether the compensation method was permitted by the FLSA. For example, Plaintiffs often note that the County made statements suggesting that the salary was compensation for only the first 40 hours worked as evidence that they did not have a clear understanding regarding how they would be paid. In truth, those statements go to the question of whether the compensation scheme was a proper means of implementing the FWW. The employees were clear about how they were getting paid. What they claim to be unclear about was whether that method was a proper FWW payment plan.

3. EMS Commander Ed Tydings' memo stating that "Hourly rate x 40 hrs = Minimum Guaranteed Salary."

4. A PowerPoint slide stating: "How We Get Paid: Guaranteed Salary/Based on 40 hours."

5. An Employee Orientation Summary on Compensation: "You will be paid your hourly rate for all hours worked."

6. The 2005 Special Leave and Payroll Information, 2010 Explanation of Overtime, 2010 Employee Manual, and the 2007 through 2010 Budget Orders, each of which contains the statement that non-exempt EMS employees will "be compensated for overtime at the same hourly rate as for their first 40 hours per week (*i.e.*, their guaranteed weekly salary divided by 40)."

7. The essentially identical affidavits of the named Plaintiffs (David Claxton, Heather Clark, and Mike Compton), which state their understandings of how they were paid, and what they were told regarding their compensation.

Clerk's Doc. No. 46.

Nine of these (the documents contained in categories 2, 5 and 6) are documents in which the County states that EMS workers receive the same hourly wage for the first 40 hours in a week as they receive for hours over 40. On the surface, this would seem to be inconsistent with the FLSA, as even under the FWW an employer must pay a premium for overtime hours. But given the facts of this case, the argument is a red herring.

As the Plaintiffs are well aware, the payment structure at issue arose out of a particular factual history. Until 1998, the County paid its EMS workers pursuant to a "traditional" FWW method: the employees received a flat salary for all of their hours, and then for each hour over 40 in any given week, they were paid one-half of the regular rate—established by dividing the total hours worked in a week into the weekly salary. But in 1999, in order to respond to compensation concerns raised by the EMS workers, the County changed the structure to make it more favorable

13

to the employees.  John Sneed testified in his deposition that the County made the change to be more competitive with the pay of surrounding areas, such as the City of Austin, and the Plaintiffs do not offer any evidence contradicting this claim.  Plaintiffs' Cross Motion for Partial Summary Judgment, Stipulated Facts ¶ 28 (Clerk's Doc. No. 36).  Specifically, instead of calculating the regular rate by dividing the salary by all of the hours worked in a week, the County declared that when overtime hours were worked, it would only divide the salary by 40 hours to calculate the regular rate.  Because an overtime premium would only be calculated when an employee worked more than 40 hours, this new approach meant that the regular rate would *always* be higher under this approach than it would be if the actual hours worked were used.

On top of this, the County decided not to limit the overtime premium to one-half of the regular rate, the amount set by the FWW.  Before 1999, the overtime premium was set at one-half of the regular rate, the amount required by the applicable Department of Labor regulations and interpretive bulletins regarding the FWW.  After 1998, with the goal of raising the EMS employees' compensation even further, the County declared that it would pay 100% of the regular rate as an overtime premium.  Thus, EMS employees would receive two times the premium that they had been receiving, based on a regular rate that was higher than it had been.[8]

The effect of these changes was that the "regular rate" as set by Williamson County would be the weekly salary divided by 40 hours—not whatever hours more than 40 the employee actually

_____

[8]Why the EMS employees chose to complain about this is an interesting question.  Ironically, one of the attorneys in the firm now representing the Plaintiffs was apparently consulted by Mr. Castello about the scheme in 2006, and reportedly told Mr. Castello that "They [Williamson County] are doing you guys very well.  I would advise you to not rock that boat."  Castello Memo, Ex. 4 to County's Mot. for Summary Judgment at p. WILCO 01136 (Clerk's Doc. No. 27).  That looks like very good advice from this vantage point.  It is not clear what caused the firm to change its opinion and file this lawsuit.

had worked that week—and the overtime premium would be 100%—not 50%—of that rate. Because of the County's decision to increase the regular rate and the overtime premium in this fashion, the end result was that the regular rate and the overtime premium were identical. This meant that an easy way for an EMS employee to look at their compensation was that no matter how many hours they worked, they would always be paid the regular rate times the hours worked. To put it another way, because the regular rate was always to be based on 40 hours, the regular rate would be constant all year.[9] And because the overtime premium was set at 100% of this rate, it too would be a constant. In concept, this approach is much simpler to apply than the "traditional" FWW method, because under the traditional approach the regular rate is different each week (as it depends upon the hours worked in a given week), and the overtime premium also varies each week (as it is based on the regular rate). Further, this approach will *always* produce a figure higher than the traditional method, as it sets a higher regular rate, and pays twice the overtime premium called for by a standard FWW approach. Viewed in historical context, it is clear why the Plaintiffs' argument is a red herring. Saying that the scheme "pays the same hourly rate for every hour worked," misrepresents what it does. What it does is pay the EMS employees considerably more than the FLSA requires. Indeed, because it resulted in such an elegantly simple calculation, it is not surprising that, as the years passed, the County often described the payment scheme in an overly simplistic manner. But for the reasons just discussed, the nine examples of this the Plaintiffs point to in support of their suit are not evidence of an FLSA violation.[10]

---

[9]To get their regular rate, all an employee had to do was take the annual salary and divide it by 2080 (the number of standard work hours in a year—40 hours x 52 weeks).

[10]Tellingly, nowhere in any of the extensive briefing do the Plaintiffs identify any authority for the proposition that paying an employee more than the FLSA requires violates the statute.

Three of the remaining documents similarly repeat the fact that the regular rate would be determined by dividing the weekly salary by 40 hours (as opposed to the hours over 40 actually worked). *See* categories 1, 3, 4. The suggestion here is that this is evidence that the salary was not intended to compensate the Plaintiffs for all of the hours they worked in a week, but rather only paid them for the first 40 hours. Again, this conclusion can only be reached if the Court wears blinders and ignores the historical context of this evidence. As has been set out above, the evidence demonstrates that the reason the County calculated the regular rate by dividing the salary by 40 hours was not because it viewed the salary as paying for only the first 40 hours worked in a week, but rather because it was trying to pay the EMS employees more—in response to the employees' concerns about their wages.

Additional evidence supports this conclusion. Section 7 of the Special Leave and Payroll Information Memo states that County employees will be "compensated with additional pay for all overtime hours at an hourly rate equal to their guaranteed salary for the work period divided by the number of hours that they actually worked during the period." Clerk's Doc. No. 36-2, 52. It then exempts the EMS employees from this method and directs that the salary be divided by only 40 hours because "EMS employees are routinely scheduled to work overtime." *Id.* This results in a favorable overtime premium for the EMS employees. Further, the memo states that the weekly salary "is not subject to reduction because the employee worked fewer than 40 [hours] . . . during the work period, " and "may not be reduced for absences—even if the employee has no accrued leave—in any work period during which the employee performed any work." *Id.* at 53. The County did not divide the EMS workers' weekly salaries by the number of hours actually worked—unlike the other County employees—because the Plaintiffs routinely worked overtime and this gave them

16

a favorable overtime premium.   And the sections preventing the County from reducing the guaranteed salary when an EMS worker worked less than 40 hours in a week, even if the employee did not have accrued leave, further counters the Plaintiffs' argument that they received an hourly wage instead of a salary intended to cover all hours worked.   If an EMS worker only worked 10 hours in a week and did not have accrued leave but still received his weekly salary, then he was not receiving an hourly wage disguised as a salary.   Although the County required the workers to deplete their hour banks for holiday, sick, and vacation time, it paid the weekly salary even in the rare instances when an employee worked less than 40 hours in a week and did not have any hours remaining in their bank.   Although the Plaintiffs attempt to mitigate this fact by stating that it was extraordinarily rare for a worker to deplete his hour bank, the frequency does not affect the analysis.

The Plaintiffs' affidavits merely repeat the above evidence.   They each state that they were paid for all hours at the same rate, which was set by dividing their weekly salary by 40 hours.   They explain that their understanding was that their salary only compensated them for the first 40 hours they worked, and that they were not receiving any additional premium for hours over 40, but rather were paid the same straight rate for all hours worked.   The Court has already addressed each of these contentions and will not repeat that discussion again.   Suffice it to say that the Plaintiffs' understandings—as amplified by the concessions contained in their deposition testimony—are not sufficient to create a fact issue here.   As described in detail above, the County's payment scheme actually paid the Plaintiffs more than the FWW required, and nothing in the Plaintiffs' affidavits disproves this.

### VI.      Conclusion

The Plaintiffs cannot create a material fact dispute with evidence that the County told them they could calculate their weekly pay using a simple equation.  Nor can they base their case on self-serving statements that they did not understand the method, especially when they signed a document stating the opposite.  They received detailed information on the payment scheme on several occasions, and they accepted their overtime premiums without complaint.  It is difficult to imagine an employer doing more to comply with the FLSA than what was done here.  Further, the Plaintiffs ask the Court to ignore the evolution of the County's payment scheme, and to view the system in a vacuum.  The big picture here is that the County abandoned a strictly traditional FWW method to pay its employees more.  For its efforts, the County got this lawsuit, notwithstanding the fact that it was transparent in its compensation method, and notwithstanding that when one of the EMS workers studied the issue himself, he concluded that the County "is paying us far above what is required under the fluctuating workweek rule."  There are no genuine issues of material fact, and under the facts, Williamson County is entitled to a judgment as a matter of law that its payment scheme in place from November 15, 2007, to October 2011 complied with the FLSA.

Accordingly, the undersigned RECOMMENDS that the District Court GRANT the Defendant's Motion for Summary Judgment (Clerk's Doc. No. 26) and DENY the Plaintiffs' Cross-Motion for Summary Judgment on Liability (Clerk's Doc. No. 36).

### VI.      Warnings

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are

being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 11th day of April, 2012.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

19